IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ACEPTANCE INDEMNITY INSURANCE COMPANY, § § § *Plaintiff*, § § § V. § § SLI FRAMING COMPANY, INC. AND § ICI CONSTRUCTION, INC., § § § *Defendants.* § | Civil Action No. 4:19-cv-4531 JURY |

ACCEPTANCE INDEMNITY
INSURANCE COMPANY, §
§
§
*Plaintiff*, §
§ Civil Action No. 4:19-cv-4531
V. §
§ JURY
§
SLI FRAMING COMPANY, INC. AND §
ICI CONSTRUCTION, INC., §
§
§
*Defendants.* §

### PLAINTIFF ACCETPANCE INDEMNITY INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Acceptance Indemnity Insurance Company ("AIIC") files this complaint for declaratory judgment against defendants SLI Framing Company, Inc. ("SLI") and ICI Construction, Inc. ("ICI"), and respectfully shows:

### PARTIES

1. Plaintiff AIIC is a Nebraska corporation with its principal place of business in North Carolina.

2. Defendant SLI is a Texas corporation with a principal place of business in Texas. SLI may be served through its registered agent, Peter Schutmatt, at 2208 Mission Drive, Kemah, Texas 77565 or wherever he may be found. For diversity, SLI is not a Nebraska or North Carolina citizen.

3. Defendant ICI is a Texas corporation with a principal place of business in Texas. ICI may be served through its registered agent, Timothy C. Ross, at 1885 Saint James Place, 15th Floor, Houston, Texas 77056 or wherever he may be found. For diversity, ICI is not a Nebraska or North Carolina citizen.

## JURISDICTION AND VENUE

4. AIIC's citizenship is diverse from SLI and ICI's citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. The court in the underlying suit confirmed an arbitration award and assessed $861,592.73 against SLI in actual damages, with additional amounts for prejudgment interest, postjudgment interest, costs and attorneys' fees. Each policy at issue in this action has a $1,000,000 limit per "occurrence," which is potentially implicated by the judgment confirming the arbitration award. Therefore, the Court has subject-matter jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1).

5. The Court has personal jurisdiction over SLI and ICI because they are Texas citizens.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this lawsuit occurred in Harris County.

## FACTS

**A.   The Project**

7. This lawsuit arises out of the construction of The District at Memorial, a 326-unit apartment complex divided among two buildings and constructed around a multilevel parking garage.

8. The project owner, Simpson Kaplan District at Memorial, LLC ("Simpson Kaplan"), retained ICI on March 24, 2014 as the general contractor.

9. ICI subcontracted SLI on August 20, 2014, to perform framing labor, including siding installation, and told SLI to commence work on August 27, 2014.

10. On February 11, 2015, SLI subcontracted Jose H. RDZ, Inc. ("RDZ") under a master craft agreement. RDZ installed siding in the courtyards at the District at Memorial

project.

11. SLI or RDZ reportedly began installing sheathing, weather-resistive barrier, and siding in the courtyards on January 23, 2015, and concluded that work on November 6, 2015.

12. Experts retained by Simpson Kaplan opined that the courtyard siding was installed improperly, which allowed water intrusion and damage. Simpson Kaplan eventually hired a different contractor to remove and replace all courtyard siding and windows.

**B.     The Arbitration**

13. On June 9, 2017, ICI filed its Second Demand for Arbitration against Simpson Kaplan and Third-Party Demand for Arbitration against SLI and other subcontractors in Case No. 01-16-0005-0316; *ICI Construction, Inc. v. Simpson Kaplan District at Memorial, LLC v. Builders First Source – Texas Installed Sales, et al.* (the "Arbitration").

14. On information and belief, Arbitration filings indicate that:

- SLI or RDZ installed the courtyard siding defectively or otherwise not in compliance with the manufacturer's instructions, which allowed water to penetrate behind weather-resistive barriers and mold to grow on interior building components;

- there were no roof coverings to prevent water from getting behind sheathing, weather-resistive barriers, windows, and siding during these time periods:

  a. Building A: January 23, 2015, to March 6, 2015;
  b. Building B: January 31, 2015, to March 13, 2015;
  c. Building C: April 17, 2015, to May 8, 2015;
  d. Building E: February 20, 2015, to March 20, 2015; and
  e. Building F: January 23, 2015, to March 6, 2015; [and]

- Simpson Kaplan eventually removed and replaced all courtyard siding and windows.

15. On March 25, 2019, the arbitrator rendered his Final Award, attached here as Exhibit 1, which included these findings:

   a.     ICI did not breach its contract with Simpson Kaplan, rendering ICI the

        prevailing party and entitling it to its outstanding contract balance;

b.     Simpson Kaplan must pay ICI's reasonable attorney fees;

c.     the reasonable cost to remedy the courtyard siding is $1,063,199.38;

d.     the damages owed by SLI and RDZ for siding remediation is $320,980.38 after deducting the insurance proceeds paid by Simpson Kaplan's insurer to Simpson Kaplan ($742,219);

e.     fault for the courtyard siding defects is apportioned 15% to SLI and 85% to RDZ "because the vast majority of the siding deficiencies were caused by installation problems as opposed to poor supervision";

f.     SLI is entitled to its $201,606.65 outstanding subcontract balance from ICI; and

g.     ICI will recover the difference between the remediation costs and the unpaid contract balance from SLI and R&S Commercial Services (another subcontractor) after full offsets.

**C.**     **ICI's Motion to Confirm the Award**

16.     On September 30, 2019, ICI moved to confirm the Arbitration award in an already pending lawsuit against ICI and SLI, Cause No. 2018-88580 in the 333rd District Court of Harris County, Texas (the "Underlying Lawsuit"), that had been initiated by Simpson Kaplan's subrogating insurer.

17.     ICI identified itself in that motion as the latter insurer's assignee. Given the assignment, ICI is the only party with an interest in collecting the arbitration award from SLI.

**D.**     **Judgment Confirming the Award**

18.     On November 12, 2019, the court in the Underlying Lawsuit signed the *Order Confirming Arbitration Award and Entry of Judgment* attached as Exhibit 2 (the "Underlying Judgment").

19.     The Underlying Judgment orders that ICI shall recover from SLI $861,592.73 in actual damages and additional amounts for prejudgment interest, postjudgment interest, cost and

attorneys' fees.

**E. The Policies**

20. AIIC issued policy no. CP00176520 to SLI as the first named insured for the period of February 16, 2015 to February 16, 2016, with a per-occurrence limit of $1 million, a general aggregate limit of $2 million and a $2,500 liability deductible. A true copy (with premium information redacted) of this policy is attached as Exhibit 3.

21. AIIC issued policy no. CP00176622 to SLI as the first named insured for the period of February 16, 2016 to February 16, 2017, with a per-occurrence limit of $1 million, a general aggregate limit of $2 million and a $2,500 liability deductible. A true copy (with premium information redacted) of this policy is attached as Exhibit 4 (with premium information redacted).

## **DECLARATORY JUDGMENT**

22. AIIC brings this claim for declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201-2202.

23. AIIC seeks a declaration that the damages awarded against SLI in the Underlying Judgment are not covered under the policies and that AIIC does not have a duty to defend or indemnify SLI in the Underlying Lawsuit.

24. The Arbitration award states the siding had to be replaced due to "[m]oisture intrusion and mold growth in the sheathing and studs."

25. Mold growth is excluded under the policies. The Fungus or Spore Exclusion states:

> This insurance does not apply to:
>
> (1) … "[P]roperty damage" … caused directly or indirectly, in whole or in part, by:

5

        a.        Any "fungus" or "spore", including "fungi" or "spores"; or

        b.        Any substance, vapor or gas produced by or arising out of any "fungus", "fungi", "spore", or "spores"; or

        c.        Any material, product, building component, building or structure that contains, harbors, nutures or acts as a medium for any "fungus", "fungi" "spore" or "spores"; or

        d.        Actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "fungus" or "spore", including "fungi" or "spores".

Such damage or injury is excluded regardless of any other cause, event, material product and/or building component that contributed concurrently or in any sequence to that injury or damage.

(2)    Any loss, cost or expense arising out of any:

        a.        Request, demand, order to statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess "fungus", "fungi", "spore", or "spores" or the effects of the same (including but not limited to, any form or type of mold, mildew, mushroom, toadstool, smut or rust).

        b.        Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing "fungus", "fungi", "spore", or "spores" or the effects of same (including, but not limited to, any form or type of mold, mildew, mushroom, toadstool, smut, or rust).

(3)    With respect to this endorsement, Exclusion **2.b. - Contractual Liability** is replaced by the following:

        b.        … "[P]roperty damage" for which the insured is obligated to pay by reason of the assumption of liability in a contract or agreement.

              We shall have no duty to investigate, defend, or indemnify any insured against any loss, claim, "suit" or other proceeding alleging injury or damages of any kind, to include, but not limited to … "property damage" … to which this endorsement applies.

Additional Definitions:

For purposes of this endorsement, the following definitions are added:

"Fungus" and/or "fungi" includes, but is not limited to, any form or type

of mold, mildew, mushroom, toadstool, smut, or rust.

"Spore" and/or "spores" means any reproductive body produced by or arising out of any "fungus" or "fungi".

26. While the award also mentioned "moisture intrusion," moisture is a prerequisite for mold growth, and the exclusion extends to concurrent causes. As quoted above, (1) property damage need only be caused "in whole or in part" by mold for the exclusion to apply to it; and (2) the exclusion applies "regardless of any other cause, event, material product and/or building component that contributed concurrently or in any sequence to that injury or damage."

27. There is no indication of property damage caused by moisture wholly unrelated to mold. If such property damage exists, it must be segregated from the mold-related damage for there to be any coverage, and no segregation has occurred. Under Texas law, the burden to perform this segregation is on the insured or one, like ICI, who claims through the insured.

28. The foregoing suffices to negate coverage, but there are additional coverage defenses or issues that may independently preclude coverage, in whole or in part, and AIIC reserves the right to rely upon them. The additional defenses or issues include, without limitation, those listed below.

- The timing of property damage – property damage must occur during the policy period to fulfill the insuring agreement;

- The Roofing Operations Exclusion – as noted above, there were reportedly no roof coverings to prevent water from getting behind sheathing, weather-resistive barriers, windows and siding;

- Whether any siding was replaced for reasons other than the repair or locating of damage to property beyond the siding itself (for example, damage to or defects within the siding alone, or purely prophylactic efforts to prevent future damage to other property where no damage to that property was found or made the subject of a location effort) – these replacement costs would not fulfill the insuring agreement or would fall within one or more of so-called business risk exclusions (exclusion j through m, next addressed);

- Exclusion j(5) for property damage to "[t]hat particular part of real property

- on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations";

- Exclusion j(6) for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it";

- Exclusion k for property damage to "'your product' arising out of it or any part of it";

- Exclusion l for property damage to "'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'";

- Exclusion m, entitled "Damage to Impaired Property or Property Not Physically Injured";

- Exclusion b, entitled "Contractual Liability";

- the General Exclusion Endorsement's exclusions for breach of contract, breach of warranty, warranty work repairs, interest and attorneys' fees;

- the "Exclusion – Designated Professional Services" endorsement; and

- the "Exclusion – Construction Management Errors and Omissions" endorsement.

## JURY DEMAND

29. AIIC demands a trial by jury on all issues of fact.

## CONCLUSION AND PRAYER

30. Because one or more policy exclusions or endorsements bar coverage for the Underlying Judgment and the claims asserted in the Arbitration, AIIC asks the Court for:

    a. A declaration that the Underlying Judgment against SLI is not covered under the Policy and that AIIC does not have a duty to defend or indemnify SLI in the Underlying Lawsuit;

    b. Court costs; and

    c. All other relief that the Court deems appropriate.

8

Respectfully submitted on November 18, 2019:

*/s/ Joseph A. Ziemianski*
Joseph A. Ziemianski
Attorney in Charge
Texas State Bar No. 00797732
E-mail: jziemianski@cozen.com

OF COUNSEL:

Bryan P. Vezey
Texas State Bar No. 00788583
E-mail: bvezey@cozen.com

COZEN O'CONNOR
1221 McKinney, Suite 2900
Houston, Texas 77009
Telephone: (832) 214-3900
Telecopier: (832) 214-3905

ATTORNEYS FOR PLAINTIFF,
ACCEPTANCE INDEMNITY INSURANCE
COMPANY